COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                       NO.
02-06-152-CR

 

 

JAMES WRIGHT                                                                  APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

        FROM
CRIMINAL DISTRICT COURT NO. 1 OF TARRANT COUNTY

 

                                              ------------

 

                                MEMORANDUM
OPINION[1]

 

                                              ------------

I. Introduction








In April 2002, a jury
convicted Appellant James Wright of two counts of aggravated sexual assault
with a deadly weapon and one count of possession of a firearm by a felon.  The jury assessed Wright=s punishment at forty-five years= confinement for each of the aggravated sexual assault offenses and
ten years= confinement
for the firearm offense.  We previously
affirmed Wright=s
conviction.  See Wright v.
State, No. 2-02-162-CR, 2003 WL 21101525, at *2 (Tex. App.CFort Worth May 15, 2003, pet. ref=d, untimely filed) (mem. op.) (not designated for publication).  In one point, Wright now appeals the trial
court=s denial of his post-conviction request for DNA testing.  We affirm. 

II. Factual and Procedural
Background

For the sake of clarity, we
again recite the facts of this case as we did in our prior opinion.  See id. at *1.  

On May 8, 2001, Vicki Jackson
walked down the street and was approached by a man and woman in a Jaguar.  The woman, whom Jackson knew by the name AClassy,@ asked
Jackson if she would like to go get a beer. 
Jackson did not know the man driving the Jaguar, but she agreed and got
into the back seat of the car.  The group
drove to a club known as the Matchbox, and Classy got out of the Jaguar to get
beer.  When Classy had not returned to
the car after several minutes, the man in the driver=s seat became agitated, began fumbling under his seat, and pulled out
a gun.  The man pointed the gun at
Jackson=s head and pulled her over the seat into the front of the car.  The man accused Jackson and Classy of Asetting him up@ and told
Jackson, AYou gonna
pay for this.@








The man drove Jackson to Katy
Street and stopped the car.  He pointed
the gun at Jackson=s head and
forced her to perform oral sex on him in the front seat of the Jaguar.  Jackson testified that during the ordeal
several witnesses passed by, but the man pointed his gun at them and told them
to go the other way.  After Jackson
performed oral sex on the man, he pulled her out of the car and made her pull
her clothes down and bend forward against the side of the Jaguar.  While holding the gun to Jackson's head, the
man penetrated Jackson's sexual organ with his own.  Jackson testified that she did not consent to
have sex with the man.  The assault
outside the Jaguar continued for about ten minutes while Jackson begged the man
to stop and called out to the witness 
for help.

Finally, a woman named Trevia
Coleman came down the street calling loudly, APookie Ray.@  The man looked up at the woman calling out to
him, stopped assaulting Jackson, ran around the car pulling up his pants, and
drove away.  Coleman and a second witness
stayed with Jackson in the street until the police arrived.








Officer Leary arrived at the
scene, and witnesses told him that the assailant was a black male with a shaved
head driving a maroon Jaguar.  Jackson
informed Officer Leary that her assailant had tattoos on his arms of a rose and
the nickname APookie.@  Coleman added that the man had
something written on his upper back but said she could not be sure what the
writing said.  Coleman also gave Officer
Leary the true name of Jackson=s assailant, James Thomas Wright.

Officer Leary searched the
surrounding area and discovered Wright outside of Louise Craven=s house about a quarter of a mile from the scene, standing next to his
maroon Jaguar.  Tattoos on Wright=s body matched those described by Jackson, and a tattoo on his upper
back read, AMr. Wright.@  Officer Leary placed Wright
under arrest.  Police found a gun holster
inside Wright=s vehicle,
and a gun matching the weapon described by Jackson hidden under a couch cushion
inside Craven=s house.

At trial and in his first
appeal, Wright unsuccessfully argued that there was insufficient evidence to
prove aggravated sexual assault because the facts in the case arguably pointed
to a situation where Wright found himself in a situation that developed into a
quasi-consensual sexual encounter that did not meet the threshold of a criminal
act.  See id. at *1.  In April 2005, Wright filed his motion for
post-conviction DNA testing and an amended motion for DNA testing in October
2005.  The State filed its reply to
Wright=s request and its memorandum, findings of fact, and conclusions of law
in March 2006.  The trial court
subsequently denied Wright=s motion and adopted the State=s proposed findings of fact and conclusions of law. 








III. Discussion

In his sole point, Wright
asserts that the trial court erred and abused its discretion by denying his DNA
testing request.  The State responds that
there was overwhelming evidence of Wright=s guilt presented at trial and, that he has failed to establish a
reasonable probability that DNA would exonerate him.   

A trial court's denial of a
motion for post‑conviction DNA testing is reviewed under a bifurcated
process.  Rivera v. State, 89
S.W.3d 55, 59 (Tex. Crim. App. 2002) (citing Guzman v. State, 955 S.W.2d
85, 89 (Tex. Crim. App. 1997)); Green v. State, 100 S.W.3d 344, 344
(Tex. App.CSan Antonio
2002, pet. ref=d).  We afford almost total deference both to the
trial court=s
determination of historical fact and to its application of law‑to‑fact
issues that turn on credibility and demeanor. 
Rivera, 89 S.W.3d at 59; Green, 100 S.W.3d at 344.  But we review de novo all other application
of law‑to‑fact issues.  Rivera,
89 S.W.3d at 59; Green, 100 S.W.3d at 344.  This de novo review usually includes the
ultimate issue in post‑conviction DNA testing cases, Awhether a reasonable probability exists that exculpatory DNA would
prove innocence.@  Rivera, 89 S.W.3d at 59.








To be entitled to post‑conviction
DNA testing under Chapter 64 of the Texas Code of Criminal Procedure, Wright
bears the burden of establishing, by a preponderance of the evidence, that he Awould not have been convicted if exculpatory results had been obtained
through DNA testing.@  See Tex.
Code Crim. Proc. Ann. art. 64.03(a)(2)(A) (Vernon 2006); Smith v.
State, 165 S.W.3d 361, 363B64 (Tex. Crim. App. 2005). 
Additionally, A[a]rticle
64.03(a) only permits a trial court to order DNA testing if the court finds
that identity was or is an issue in the case.@  Green, 100 S.W.3d at
344 (citing Tex. Code Crim. Proc. Ann.
art. 64.03(a)(1)(B)); Rivera, 89 S.W.3d at 59 (citing Tex. Code Crim. Proc. Ann. art.
64.03(a)(1)(A)(i), (2)(A)).  Exculpatory
evidence is evidence tending to establish a criminal defendant=s innocence.  Black=s Law Dictionary 597 (8th ed. 2004).








Wright first argues that he
has met the statutory requirements for post-conviction DNA testing because
identity was an issue in the case.  In
support of this contention, Wright cites portions of Jackson=s testimony where she failed to identify him as her assailant in
court.  Wright also points us to the
testimony of eyewitness Thelma Robinson who was likewise unable to identify him
in court.  The State responds that
because Wright argued at trial that the sex was consensual, identity was not an
issue at trial.  However, the resolution
of this question is not determinative here. 
Under Texas Code of Criminal Procedure article 64, the trial court was only
required to order DNA testing if it found both that identity was an issue and
that Wright had established by a preponderance of the evidence a reasonable
probability that he would not have been prosecuted or convicted if exculpatory
results had been obtained through DNA testing. 
See Tex. Code Crim. Proc.
Ann. art. 64.03(a)(1)(B), (2)(A). 
Because we hold that Wright failed to establish by a preponderance of
the evidence that he would not have been convicted if exculpatory results had
been obtained through DNA testing, we need not decide whether identity was an
issue at trial.

Jackson testified that she
did not think that Wright ejaculated in her mouth, vagina, or anus.  Thus, there is no evidence that the absence
of Wright=s DNA in or
on Jackson would prove that he did not sexually assault Jackson.  Furthermore, Jackson did not testify
that the only sexual contact she experienced on the day of the offense was
during Wright=s
assault.  In fact, Jackson acknowledged
on cross-examination that the semen of three different individuals was found
during her medical examination. 
Therefore, the presence of multiple genetic profiles also does not
exonerate Wright.  Lastly, DNA testing in
this case has previously been performed, and the results were inconclusive.








As discussed above, there was
a wealth of testimony and evidence presented at trial tying Wright to the
assault.  Accordingly, we hold that
Wright has failed to established by a preponderance of the evidence that he would
not have been convicted if exculpatory results had been obtained through DNA
testing.  See Tex. Code Crim. Proc. Ann. art.
64.03(a)(2)(A).  Therefore, the trial
court did not err or abuse its discretion by denying Wright=s motion for DNA testing.

We overrule Wright=s sole point.

IV. Conclusion

Having overruled Wright=s sole point, we affirm the trial court=s judgment. 

 

 

BOB MCCOY

JUSTICE

 

PANEL A:   CAYCE, C.J.; WALKER and MCCOY, JJ.

 

DO
NOT PUBLISH

Tex. R. App. P. 47.2(b)

 

DELIVERED:
January 25, 2007











[1]See Tex. R. App. P. 47.4.